UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BARBARA MATTHEWS,

                         Plaintiff,

-vs-                                                        Case No.  6:04-cv-451-Orl-JGG

JO ANNE B. BARNHART,
Commissioner of Social Security,

                         Defendant.
_____/

# ORDER

     Plaintiff Barbara Matthews ["Mathews"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for supplemental security income benefits.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

     On March 20, 2000, Matthews filed a claim for supplemental security income benefits.  R. 17.  On March 11, 2002, the Honorable Albert D. Tutera, Administrative Law Judge ["ALJ"], held a 21-minute hearing on Matthews's claim in Melbourne, Florida.  R. 236 - 252.  Attorney Bradley K. Boyd represented Matthews at the hearing, at which Matthews testified.  R. 236.

     On April 11, 2002, the ALJ issued his decision that Matthews was not entitled to benefits. R. 24.  Following a review of the medical and other record evidence, the ALJ found that Matthews

-1-

had no past relevant work.  R. 23, Finding 7.  The ALJ found that Matthews retained the residual

functional capacity to perform a wide range of the physical exertional requirements of light work.

R. 23, Finding 10.  The ALJ applied the Medical-Vocational Guidelines, and concluded that

Matthews was not disabled.  R. 23, Finding 12.

On February 27, 2004, after considering a brief submitted by Matthews's representative [R.

229 - 233] but no additional evidence, the Appeals Council denied review.  R. 4.  On April 1,

2004, Matthews timely appealed the Commissioner's decision to the United States District Court.

Docket No. 1.  On October 13, 2004, Matthews filed a memorandum of law in support of her

appeal.  Docket No. 17.  On November 1, 2004, the Commissioner filed a memorandum in support

of her decision.  Docket No. 18.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Matthews assigns three errors to the Commissioner.  First, Matthews claims that the

Commissioner erred in applying the Medical-Vocational Guidelines despite her nonexertional

limitations.  Second, Matthews claims that the Commissioner erred by failing to give proper

weight to the opinions of her treating physician when evaluating her mental impairment.  Third,

Matthews claims that the Commissioner erred when assessing her testimony by failing to follow

the pain standard and by failing to make sufficient credibility findings.

The Commissioner argues that substantial evidence supports her decision to deny benefits.

First, the Commissioner argues that neither Matthews's treating physicians nor any other physician

ever indicated that her mental impairment was severe enough to limit her ability to work.  Second,

the Commissioner argues that the ALJ properly reviewed the evidence and articulated his findings

in determining that Matthews's pain testimony was not fully credible.  Third, the Commissioner
argues that the ALJ's use of the Medical-Vocational Guidelines was proper, given his findings as
to the severity of Matthews's mental impairment and pain.

## III.  THE STANDARD OF REVIEW

### A.  Affirmance

The Commissioner's findings of fact are conclusive if supported by substantial evidence.
42 U.S.C. § 405 (g).  Substantial evidence is more than a scintilla — i.e., the evidence must do
more than merely create a suspicion of the existence of a fact, and must include such relevant
evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v.
Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th
Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937
F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court
will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if
the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards
v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th
Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence
favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v.
Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine
reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also
must consider evidence detracting from evidence on which Commissioner relied).

**B.     Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405 (g)(Sentence Four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of  42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

-4-

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405 (g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547,

1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (i), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.   Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);

---

[1] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.*

*Sabo v. Commissioner of Social Security*,  955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527 (d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner.  20 C.F.R. § 404.1527 (e).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and

to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

### C.    **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

### D.    **The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520,  416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520 (b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520 (c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520 (d).  Fourth, if a

claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520 (e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423 (d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See id.*, 985 F.2d at 534.

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The claimant must prove disability on or before the last day of his or  her insured status for the purposes of disability benefits.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), (c).  If a claimant becomes disabled after the claimant has lost insured status, his or her claim for disability benefits must be denied despite the disability.  *See, e. g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

-10-

E.      **The Evaluation of Mental Disorders**

The evaluation of disability on the basis of mental disorders requires the documentation of

a medically determinable impairment, as well as consideration of the degree of limitation such

impairment may impose on the individual's ability to work.  The listings for mental disorders are

arranged in eight diagnostic categories.  20 C.F.R. Pt. 404, Subpt. P, App. 1.   The criteria in

paragraphs B and C of the listings for mental disorders describe those functional limitations

associated with mental disorders which are incompatible with the ability to work — i.e.

limitations in functional areas deemed essential to work.  A mental impairment is medically

equivalent to a listed mental impairment if the medical findings are at least equal in severity and

duration to the listed findings.  20 C.F.R. § 404.1526.  An individual meeting or equaling the

criteria could not reasonably be expected to engage in gainful work activity.  20 C.F.R. Pt. 404,

Subpt. P, App. 1.

Individuals who have an impairment with a level of severity which does not meet the

criteria of the listings for mental disorders may or may not have the residual functional capacity

["RFC"] which would enable them to engage in substantial gainful work activity.  The

determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in

substantial gainful work activity when the criteria of the listings for mental disorders are not met

or equaled, but the impairment is nevertheless severe.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

For mental disorders, severity is assessed in terms of the functional limitations imposed by

the impairment.  Functional limitations are assessed using the criteria in paragraph B of the listings

for mental disorders (activities of daily living; social functioning;  concentration, persistence, or

-11-

pace;  and ability to tolerate increased mental demands associated with competitive work).  A

"marked" degree of limitation means more than moderate, but less than extreme.  A marked

limitation may arise when several activities or functions are impaired or even when only one is

impaired, so long as the degree of limitation is such as to seriously interfere with the ability to

function independently, appropriately and effectively.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The

Commissioner employs a technique to ensure that ALJ's obtain, consider, and properly evaluate all

evidence needed to evaluate mental impairment severity.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The

technique is used in connection with the sequential evaluation process.  *See* 20 C.F.R. §§

404.1520a and 416.920a.

The presence of a mental disorder should be documented primarily on the basis of reports

from individual providers, such as psychiatrists and psychologists, and facilities such as hospitals

and clinics.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Information from both medical and non-medical

sources may be used to obtain detailed descriptions of the individual's activities of daily living;

social functioning;  concentration, persistence and pace;  or ability to tolerate increased mental

demands (stress).  This information can be provided by programs such as community mental

health centers, day care centers, and family members who have knowledge of the individual's

functioning.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  In some cases descriptions of activities of daily

living or social functioning given by individuals or treating sources may be insufficiently detailed

and/or may be in conflict with the clinical picture otherwise observed or described in the

examinations or reports.  It is necessary to resolve any inconsistencies or gaps that may exist in

order to obtain a proper understanding of the individual's functional restrictions.

An individual's level of functioning may vary considerably over time.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The level of functioning at a specific time may seem relatively adequate or, conversely, rather poor.  Proper evaluation of the impairment must take any variations in level of functioning into account in arriving at a determination of impairment severity over time.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication in order to establish the individual's impairment severity.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  This evidence should include treatment notes, hospital discharge summaries, and work evaluation or rehabilitation progress notes if these are available.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Some individuals may actually have worked during the period of time pertinent to the determination of disability.  Information concerning the individual's behavior during any attempt to work and the circumstances surrounding termination of the work effort are particularly useful in determining the individual's ability or inability to function in a work setting.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

Particular problems are often involved in evaluating mental impairments in individuals who have long histories of repeated hospitalizations or prolonged outpatient care with supportive therapy and medication.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Individuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms.  Such individuals may be much more impaired for work than their signs and symptoms would indicate.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The results of a single examination may not adequately describe these individuals' sustained ability to function.  It is, therefore, vital to review all pertinent information relative to the individual's condition, especially

-13-

at times of increased stress.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  It is mandatory to attempt to

obtain adequate descriptive information from all sources which have treated the individual either

currently, or in the time period relevant to the decision.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

Attention must be given to the effect of medication on the individual's signs, symptoms

and ability to function.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  While psychotropic medications may

control certain primary manifestations of a mental disorder, e.g., hallucinations, such treatment

may or may not affect the functional limitations imposed by the mental disorder.  20 C.F.R. Pt.

404, Subpt. P, App. 1.  In cases where overt symptomatology is attenuated by the psychotropic

medications, particular attention must be focused on the functional restrictions which may persist.

These functional restrictions are also to be used as the measure of impairment severity.  20 C.F.R.

Pt. 404, Subpt. P, App. 1.

In some cases, the evidence shows that an individual's impairments are subject to

temporary remission.  In assessing whether medical improvement has occurred in persons with this

type of impairment, the ALJ will consider the longitudinal history of the impairments, including

the occurrence of prior remission, and prospects for future worsening.  Improvement in such

impairments that is only temporary will not warrant a finding of medical improvement.  20 C.F.R.

§ 404.1594 (iv).

The Listing for Affective Disorders is as follows:

**12.04 <u>Affective Disorders</u>**:  Characterized by a disturbance of mood, accompanied
by a full or partial manic or depressive syndrome.  Mood refers to a prolonged
emotion that colors the whole psychic life;  it generally involves either depression
or elation.
The required level of severity for these disorders is met when the requirements in
both A and B are satisfied.

-14-

A.      Medically documented persistence, either continuous or intermittent, of one of the following:

　　　　1. Depressive syndrome characterized by at least four of the following:

　　　　　　a. Anhedonia or pervasive loss of interest in almost all activities;  or
　　　　　　b. Appetite disturbance with change in weight;  or
　　　　　　c. Sleep disturbance;  or
　　　　　　d. Psychomotor agitation or retardation;  or
　　　　　　e. Decreased energy;  or
　　　　　　f. Feelings of guilt or worthlessness;  or
　　　　　　g. Difficulty concentrating or thinking;  or
　　　　　　h. Thoughts of suicide;  or
　　　　　　i. Hallucinations, delusions or paranoid thinking;  or

　　　　　　2. Manic syndrome characterized by at least three of the following:
　　　　　　a. Hyperactivity;  or
　　　　　　b. Pressure of speech;  or
　　　　　　c. Flight of ideas;  or
　　　　　　d. Inflated self-esteem;  or
　　　　　　e. Decreased need for sleep;  or
　　　　　　f. Easy distractibility;  or
　　　　　　g. Involvement in activities that have a high probability of painful consequences which are not recognized;  or
　　　　　　h. Hallucinations, delusions or paranoid thinking;
or
　　　　　　3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND

B.      Resulting in at least two of the following:
　　　　1. Marked restriction of activities of daily living;  or
　　　　2. Marked difficulties in maintaining social functioning;  or
　　　　3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
　　　　4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1.

An individual may meet the separate Listing for mental retardation if he or she has a valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing additional and significant work- related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

**F.    Other Work**

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"].  *Foote,* 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through

-16-

the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

1.   **Pain**

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which

-17-

reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh

Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and
> either (2) objective medical evidence that confirms the severity of the alleged pain
> arising from that condition or (3) that the objectively determined medical condition
> is of such a severity that it can be reasonably expected to give rise to the alleged
> pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain

alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v.*

*Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not,

by itself, conclusive of disability.  42 U.S.C. § 423 (d)(5)(A).

### 2.   **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding.  *Foote,* 67 F.3d at 1561-62*; Jones v. Department of Health and Human*

*Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial

evidence).  A reviewing court will not disturb a clearly articulated credibility finding with

substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th

Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the

failure to articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545

(11th Cir. 1988).

-18-

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

## V.   APPLICATION AND ANALYSIS

### A.   The Facts

Matthews was born on January 27, 1957. She was 45 years old at the time of the hearing before the ALJ. R. 237. She had a 12th grade education and past relevant work as a child care worker, an assembler, and as a machine parts tester. R. 237, 67 - 74. She testified that she had not worked since 1985. R. 245. She has filed four previous SSI applications based on disability — in 1992, 1995, 1997, and 1998 — all of which were denied initially and upon reconsideration. R. 54. Her request for a hearing in the earliest case was dismissed as untimely, and she did not appeal any of the other decisions. R. 54.

In November 1991, Matthews was involved in a motor vehicle accident. R. 111. She went to the emergency room with complaints of back and neck pain. Upon examination, Matthews displayed paravertebral tenderness to the cervical and lumbar spine. Matthews was diagnosed with cervical and lumbar sprain. R. 111 - 12.

-19-

On November 29, 1995, Matthews went to David Todd, D.O.  R. 193 - 95.  Matthews reported continuing pain to her neck, under her shoulder blades, middle back, lower back, right hip and legs.  R. 195.  Dr. Todd assessed Matthews as suffering from chronic low back pain syndrome and increased her dose of Ibuprofen from 600 mg twice a day to 800 mg every six hours as needed. R. 193.  On December 13, 1995, Dr. Todd prescribed Skelaxin for Matthews's muscle spasms in her back.  R. 192.  On November 15, 1996, after switching to Flexeril because her insurance would not pay for the Skelaxin, Matthews reported low back pain with radiation down the posterior right leg.  R. 184.  She also reported that her right leg gave out every once in awhile. Dr. Todd added a diagnosis of probable lumbar disc disease and referred Matthews for an orthopedic consultation. R. 184.  He also prescribed another muscle relaxant, Robaxin.  R. 184.

On June 15, 1998, Matthews reported to Dr. Todd that she continued to suffer back pain. R. 178.  Dr. Todd assessed decreased muscle strength of 3/5 in Matthews' right hip and knee.  R. 178.  Dr. Todd prescribed a trial of antidepressant Paxil in an effort to control Matthews's chronic pain.  R. 178.  On September 28, 1998, Dr. Todd noted some paravertebral muscle spasms in Matthews's lumbar spine.  R. 172.  Matthews reported that the antidepressant was not helping her back pain.  R. 172.  Dr. Todd increased the dose of Paxil and prescribed Norflex and Naprosyn.  R. 172.

On September 3, 1999, Matthews reported to Dr. Todd that the Paxil keeps her "more calm," but that the Norflex was not helping her pain.  R. 170.  Dr. Todd diagnosed chronic back pain, posterior neck and shoulder muscle spasms and anxiety.  R. 170.  He continued the prescriptions of Paxil and Naprosyn and prescribed Parafon Forte.  R. 170. One week later,

Matthews called Dr. Todd to seek an increase in the Parafon Forte dosage and to request a referral for pain management and physical therapy.  R. 168.

On July 10, 2000, Matthews underwent a mental consultive examination performed by Scott M. Kaplan, Psy.D.  Matthews reported experiencing depression as early as 1991 secondary to pain in her low back.  Matthews reported continued depression along with feelings of sadness, trouble falling and staying asleep, fluctuating appetite, reduced energy level, crying spells, irritability, and feelings of hopelessness and worthlessness.  On examination, Matthews's mood and affect appeared depressed.  Dr. Kaplan noted that Matthews' concentration and task persistence were variable.  Dr. Kaplan diagnosed Matthews with major depressive episode and chronic pain syndrome, describing her prognosis as "guarded."  R. 115 - 17.

Matthews went to Ashish Tandon, M.D. on March 5, 2001.  Matthews reported occasional paraesthesias.  She reported spasm and pain in the upper trapezius and upper back muscles as well as lower back.  On examination, Dr. Tandon confirmed spinal and  paraspinal muscle spasms and tenderness in Matthews's upper back and lower back. R. 160.

On March 29, 2001, Dr. Tandon noted limited range of motion in Matthews's right shoulder.  Matthews told him that she felt much better, and that her medication was blocking her pain, but that it returned if she stopped taking it.  Dr. Tandon diagnosed degenerative joint disease with radiculopathy and continued Matthews's prescriptions of Skelaxin, Naproxen and Ultram.  R. 158.

On June 1, 2001, Matthews underwent an evaluation by Anthony W. Ware, M.D. for right shoulder pain.  R. 147.  She reported having slipped while in the shower in May 2001, injuring her

-21-

right shoulder.  R. 147.  Matthews described aching, throbbing pain in the right shoulder with radiation into the arm.  R. 147.  Examination revealed diffuse tenderness upon palpation of the right shoulder.  R. 147.  Dr. Ware noted that radiographs of the shoulder showed an anterior inferior dislocation with postreduction x-ray revealing reduction of the glenohumeral joint.  R. 147, 197.  Dr. Ware referred Matthews to Health First for physical therapy.  R. 147.

On July 10, 2001, Matthews reported to Dr. Ware that she continued to experience pain in her right shoulder, though it had greatly diminished.  On examination, Matthews displayed a positive apprehension test and reduced range of motion.  Dr. Ware ordered continued physical therapy.  R. 228.

On August 31, 2001, Dr. Sahay examined Matthews's right shoulder, noting swelling extending into the upper arm.  Matthews displayed tenderness on palpation all around the right shoulder and was unable to extend her arms to greater than ninety degrees.  Dr. Sahay reported that Matthews had no restriction of adduction or abduction.  Dr. Sahay prescribed Ultram and continued the prescription for Paxil.  R. 155.

On September 12, 2001, Dr. Sahay reported that Matthews continued to complain of chronic pain in the neck and right shoulder.  Matthews reported that the Ultram had not relieved the pain, but that she did not wish to take any Darvocet, Celebrex, or anti-inflammatory medication.  Dr. Sahay wrote that he was "at a loss here regarding her pain management since none of the pain medications appear to be helping her and she is refusing the other nonsteroidals."  Dr. Sahay referred Matthews to pain management and ordered an MRI of the neck.  R. 154.

The cervical MRI dated September 20, 2001 showed a central/left paramedian disc herniation at C5-6 and a generalized bulge at C6-7.  R. 196.  On November 16, 2001, Dr. Ware noted decreased internal rotation of Matthews's right shoulder.  Matthews displayed weakness with resisted supraspinatus testing.  Her apprehension test was negative.  Dr. Ware recommended continued treatment with pain management and performance of home physical therapy exercises. R. 226.

**B.**   **The Analysis**

Matthews contends that the ALJ erred in finding that her mental impairment was not severe.  Docket No. 17 at 8.  More precisely, she argues that the ALJ failed to give proper weight to the opinions of her treating physicians when evaluating her mental impairment. She contends that Dr. Todd and Dr. Sahay documented her depression and anxiety, and prescribed Paxil.  R. 155, 170.  Though true, this misses the point.  The evaluation of disability on the basis of mental disorders requires more than just documentation of a medically determinable impairment.  It also requires consideration of the degree of limitation such impairment may impose on the individual's ability to work.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Matthews cites no evidence that Dr. Todd, Dr. Sahay, or any other treating physician ever determined that Matthews's depression or anxiety would limit her ability to work.  Thus, the ALJ's finding that Matthews's mental impairment was not severe does not conflict with the opinions of her treating physicians.

Further, the evidence in the record supports the ALJ's finding.  As the Commissioner points out, after Dr. Todd prescribed the Paxil in June 1998 [R. 178] and increased the dosage in September 1998 [R. 175], the record indicates that he (and Matthews) thought that her depression

was controlled.  There is no evidence in his records that she continued to complain about the

depression, or that he considered altering the Paxil dosage or switching her to a different (and

potentially more effective) antidepressant.  In June of 1998, when she sought to have him sign a

letter indicating that she was disabled, he instead told her he thought she could work.  R. 177.  So

far as the record discloses, neither Dr. Sahay nor Dr. Todd indicated that Matthews's depression

was continuing to trouble her, that it might limit her ability to work, or that more aggressive

measures were needed to bring it under control.  In short, none of Matthews's treating physicians

suggested that her mental impairment was severe.  As such, the ALJ did not fail to give those

opinions their proper weight.

Matthews points out that a consultive examiner, Dr. Kaplan, diagnosed her with "Major

Depressive Episode"[2] and "Chronic Pain Syndrome," identifying a depressive mood and affect,

variable concentration and memory, and variable concentration and task persistence with trouble

staying focused.  R. 116.  However, Dr. Kaplan did not indicate that he thought Matthews was

disabled or even significantly limited by her mental impairment.  Instead, he opined that Matthews

appeared "capable of gainful activity" and that she "should not experience significant

---

[2]At first, Matthew's brief on appeal overstates, perhaps unintentionally, the severity of the diagnosis of Scott M. Kaplan, Psy.D. as "Major Depressive *Disorder*"[citing R. 115 - 17], although Matthew's brief later correctly states Dr. Kaplan's diagnosis as "Major Depressive Episode" [citing R. 117].  Docket No. 17 at 8, 10.  A Major Depressive Episode is but one part of a diagnosis of a Major Depressive Disorder.  According to the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (American Psychiatric Association 4th Ed. 1994) ["DSM-IV"], the diagnostic criteria for DSM-IV 296.3 Major Depressive Disorder, Recurrent are the presence of two or more major depressive episodes including: depressed mood most of the day, nearly every day; markedly diminished interest or pleasure in all, or almost all activities most of the day, nearly every day; significant weight loss; insomnia or hypersomnia nearly every day; psychomotor agitation or retardation nearly every day; fatigue or loss of energy nearly every day;  feelings of worthlessness or excessive or inappropriate guilt nearly every day; diminished ability to think or concentrate, or indecisiveness, nearly every day; recurrent suicidal ideation.  Although the DSM-IV at 344 describes the criteria for diagnosing a Major Depressive Disorder, Single Episode, Dr. Kaplan does not make that diagnosis.

decompensation in a work-like setting from a psychological perspective."  Along with the

unexceptional reports of her treating physicians, Dr. Kaplan's report provides substantial support

for the ALJ's finding that Matthews's mental impairment was not severe.

Matthews complains that, in evaluating her testimony, the ALJ failed to make proper

credibility findings and failed to apply the Eleventh Circuit's pain standard.  Docket No. 17 at 10.

Matthews testified that she experiences chronic back pain with spasms and shoulder pain [R. 237 -

38], low back pain [R. 239], and numbness and weakness in her right leg [R. 240].  She testified

that her pain medication and chiropractic treatments did not help with her pain.  R. 238 - 39.  She

told the ALJ that she wore a sling all the time [R. 238 - 39], that she could only do a little bit of

housework before being overcome by the pain [R. 242], that her right hand was too weak to lift

any weight, and that her left hand could lift only five or six pounds [R. 245].  She testified that she

could only stand for 15 minutes at a time, and only sit for 10 or 15 minutes at a stretch.  R. 246.

The ALJ found Matthews's testimony to be "somewhat exaggerated" and "unpersuasive of

an inability to perform work-related activities."  R. 21.  He explained that

> [Matthews] testified that her back hurts all the time, but her treating source's records
> reflect that she admitted on March 5, 2001 that Ultram was controlling her pain.
> Further, she was urged to exercise at that time.  She complained of right hip pain, but
> an X-ray was negative.  She appeared at the hearing with her right shoulder in a sling
> and implied she had no function in that extremity, but Dr. Ware's records reflect that
> she has received relief with injections and her pain was "greatly diminished" as of
> July 2001.  Further, there is no indication that the claimant's right shoulder
> dislocation will not resolve within less than 12 months of onset.  Considering the
> definitive laboratory and clinical findings, the claimant's subjective complaints are
> beyond what would reasonably be expected in terms of intensity, duration, or
> frequency.

R. 21.

-25-

The ALJ's findings and discussions indicate that he properly applied the *Holt* pain standard.  Although the ALJ did not explicitly cite to the *Holt* decision, he did cite to 20 C.F.R. § 416.929, which contains the same language regarding subjective pain testimony that the United States Court of Appeals for the Eleventh Circuit interpreted when establishing that standard.  This is sufficient.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 - 26 (11th Cir. 2002).

Matthews does not attack any of the evidence cited by the ALJ or contend that it is insufficient to support a finding that her pain testimony was not credible.  Instead, Matthews points to other evidence — such as an MRI that showed disk herniation in September 2001 [R. 196] and Dr. Tandon's March 2001 diagnosis of degenerative joint disease in her neck [R. 158]..  Docket No. 17 at 12.  She contends that this evidence, along with her physicians' records documenting her complaints and her own subjective testimony, satisfies the pain standard set forth in *Holt*.  Docket No. 17 at 12.

As noted above, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  The evidence cited by Matthews arguably satisfies the first prong, providing evidence of an underlying medical condition that could cause the pain she allegedly suffers.  Matthews does not explain how her evidence might satisfy either of the two remaining prongs, however, and the Court finds that it neither confirms the severity of the alleged pain nor shows that her condition can reasonably be expected to give rise to such pain.  Rather, as the Commissioner points out, the record contains substantial evidence in

support of the opposite conclusion, such as Matthews's reliance on conservative treatment for her

pain, and Dr. Tandon's March 2001 observation that Matthews's symptoms were "over-

exaggerated" [R. 159].  Even in the absence of such additional evidence, the ALJ articulated

explicit and adequate reasons for discrediting Matthews's testimony.

Finally, Matthews argues that the ALJ improperly relied exclusively on the grids in

reaching his unfavorable decision.  Docket 17 at 7.  She contends that she suffers from several

nonexertional impairments — chronic pain syndrome, depression, and anxiety — and that these

impairments required the ALJ to elicit testimony from a vocational expert.  Docket 17 at 7.

However, the existence of a non-exertional impairment, alone, does not compel an ALJ to abandon

the grids.  Exclusive reliance on the grids is inappropriate "either when a claimant is unable to

perform a full range of work at a given residual functional level or when a claimant has a non-

exertional impairment that significantly limits basic work skills."  *Walker v. Bowen*, 826 F.2d 996,

1002-03 (11th Cir. 1987).  As the preceding analysis shows, Matthews did not demonstrate that

her pain, depression or anxiety had such an effect on her ability to work, and the ALJ's findings to

the contrary are supported by substantial evidence.  As such, the ALJ could properly rely on the

grids.

**VI.**   **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.  The Clerk

-27-

should enter a judgment.

   **DONE AND ORDERED** this 27th day of May, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL               33602

The Honorable Albert Tutera
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL              32817